Mark STUDLER, Appellant–Plaintiff,

v.

**INDIANA BUREAU OF MOTOR VEHICLES and Ronald L. Stiver, in his official capacity as Commissioner of the Indiana Bureau of Motor Vehicles, Appellees–Defendants.**

No. 49A02–0804–CV–385.

Court of Appeals of Indiana.

Nov. 17, 2008.

Publication Ordered Nov. 20, 2008.

the victim in support of his petition for post-conviction relief.

Kenneth J. Falk, ACLU of Indiana, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Thomas M. Fisher, Solicitor General of Indiana, Heather L. Hagan, Deputy Attorney General, Attorneys for Appellees.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Mark Studler appeals the trial court's order denying his motion for summary

judgment and granting the Indiana Bureau of Motor Vehicles' ("BMV") motion for summary judgment. On appeal, Studler raises a single issue, which we restate as whether charging an administrative fee for the purchase of a special group recognition license plate, such as the "Environment" license plate, but not for the "In God We Trust" license plate violates Article I, section 23, of the Indiana Constitution. Concluding that charging an administrative fee for some license plates but not for others is not unconstitutional because the legislative classification of license plates is reasonably related to inherent characteristics of the license plates and the requirement of paying the administrative fee is uniformly applicable to all similarly situated license plates, we affirm.

*Facts and Procedural History*[1]

The BMV offers many alternative license plates that motorists may place on their vehicles in lieu of the standard Indiana license plate.[2] These alternatives include license plates designed for: current and former members of the U.S. armed forces; colleges, universities and other organizations; particular causes; and hobbies. In addition, Indiana currently offers two alternative standard license plates, "In God We Trust" and "Lincoln's Boyhood Home."[3]

Indiana Code chapter 9–18–25 ("chapter 25") governs special group recognition license plates. Indiana Code section 9–18–25–1 specifically exempts many Indiana li-cense plates, including the "In God We Trust" license plate, from the application of chapter 25. The license plates that are governed by chapter 25 may be broken down into two general categories: 1) license plates created specifically by statute and designated as special group recognition license plates; and 2) license plates created as a result of an organization's petition for a special group recognition license plate. The "Environment" license plate falls into the former category.

In order to purchase a chapter 25 special group recognition license plate, a motorist must pay the regular vehicle registration fees, the administrative fee, and the group fee, if any. All chapter 25 special group recognition license plates, whether created by statute or as a result of an organization's petition, require payment of a $15 administrative fee. For special group recognition license plates created by statute, the statute also sets the amount of the group fee.[4] For special group recognition license plates created by an organization's petition, the organization sets the amount of the group fee or may choose to charge no group fee at all. Organizations may also require other eligibility factors, such as membership in the organization or obtaining an authorization form, as a condition for obtaining the license plate.

In order to purchase a non-chapter 25 license plate, a motorist need only pay the regular registration fees and the group fee or additional fee, if any.[5] No non-chapter

1. We heard oral argument on October 14, 2008, at DePauw University in Greencastle, Indiana. We thank counsel for their advocacy and extend our appreciation to DePauw for hosting the oral argument.

2. *See* Indiana's License Plates, http://www.in.gov/bmv/3224.htm (last visited November 17, 2008).

3. At the time that Studler filed his lawsuit, the "Lincoln's Boyhood Home" license plate did

not yet exist. *See* P.L. 30–2008, 2008 Ind. Acts 980 (Mar. 3, 2008) (authorizing the issuance of the license plate).

4. The group fee for all license plates created by statute is $25.00 except for the "Go Colts" license plate, which has a group fee of $20.00.

5. In order to obtain a "Hoosier Veteran" or "Support Our Troops" license plate, a motorist must pay a $15.00 or $20.00 group fee

25 license plates require payment of the $15.00 administrative fee. However, in order to receive most of the non-chapter 25 license plates, the motorist must meet additional eligibility requirements such as military service or decoration. Any motorist can receive the standard Indiana license plate, the "In God We Trust" license plate or the "Lincoln's Boyhood Home" license plate by paying the regular registration fees only.[6]

In March of 2007, Studler requested and purchased an "Environment" license plate from a local BMV license branch. Studler paid $40.00 (the $15.00 administrative fee plus a $25.00 group fee) in addition to regular registration fees to obtain his "Environment" license plate. In order to continue displaying the "Environment" license plate on his vehicle, Studler must continue to pay his regular registration fees plus the additional $40.00 each year that he renews his vehicle registration.

On April 23, 2007, Studler filed a complaint seeking a declaratory judgment and injunctive relief. Specifically, Studler asked the trial court to declare Indiana Code sections 9–18–24.5–4 and 9–29–5–34.5 unconstitutional as violating Article I, section 23, of the Indiana Constitution and to enjoin the BMV to either allow him to obtain his "Environment" license plate without paying additional fees or require the BMV to assess the administrative fee for the "In God We Trust" license plate. Studler filed a motion for summary judgment and the BMV filed a cross-motion for summary judgment. The trial court held a hearing on the motions on April 10, 2008,

and issued detailed findings of fact and conclusions of law granting the BMV's motion for summary judgment and denying Studler's motion. Studler now appeals.

### Discussion and Decision

### I. Standard of Review

■ On appeal from a grant of summary judgment, this court is bound by the same standard as the trial court. *Hagerman Constr. Co. v. Long Elec. Co.*, 741 N.E.2d 390, 391 (Ind.Ct.App.2000), *trans. denied.* Generally, summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hoesman v. Sheffler*, 886 N.E.2d 622, 626 (Ind.Ct.App.2008). However, the facial constitutionality of a statute is a pure question of law, and, therefore, we review the matter de novo. *Hochstedler v. St. Joseph County Solid Waste Mgmt. Dist.*, 770 N.E.2d 910, 917 (Ind.Ct.App.2002).

■ In addition, when an appellant challenges the constitutionality of a statute, we presume that the statute is constitutional until that presumption is overcome by a contrary showing. *Gray v. Daimler Chrysler Corp.*, 821 N.E.2d 431, 435 (Ind. Ct.App.2005). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.* The party must demonstrate that no set of circumstances exists that would make the statute constitutional. *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999). If a statute

---

respectively. In order to obtain an Amateur Radio Operator license plate, a motorist must pay an $8.00 additional fee. In order to obtain a personalized license plate or utilize an original year of manufacture license plate, a motorist must pay a $48.00 additional fee. No other non-chapter 25 license plates require payment of an additional fee.

6. Since the "Lincoln's Boyhood Home" license plate did not yet exist at the time of Studler's lawsuit, any motorist paying regular registration fees at that time could only receive the standard Indiana license plate or the "In God We Trust" license plate.

can be construed to support its constitutionality, such construction must be adopted and the statute found constitutional. *Pollard,* 886 N.E.2d at 72.

## II. Article I, Section 23, the Privileges and Immunities Clause

Studler argues that Indiana Code sections 9–18–24.5–4 and 9–29–5–34.5 violate Article I, section 23, because the General Assembly's decision to charge the administrative fee for the "Environment" license plate but not for the "In God We Trust" license is not reasonably related to inherent characteristics which distinguish the two license plates.

 "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Ind. Const. art. I, § 23. A statute may be the subject of a claim under Article I, section 23, when it either grants unequal privileges or imposes unequal burdens. *Martin v. Richey,* 711 N.E.2d 1273, 1280 (Ind.1999). When determining the constitutionality of a statute granting unequal privileges or immunities to differing classes of persons, we employ a two-part test (the *"Collins* test"): "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Boggs v. Tri-State Radiology, Inc.,* 730 N.E.2d 692, 696 (Ind.2000) (quoting *Collins v. Day,* 644

N.E.2d 72, 80 (Ind.1994)). In applying the *Collins* test, we afford substantial deference to the General Assembly. *Id.*

### A. The Classification System

 The question of classification under Article I, section 23, of the Indiana Constitution is primarily for the General Assembly and will only become a judicial question if the lines drawn appear arbitrary or manifestly unreasonable. *Chaffin v. Nicosia,* 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974). With respect to the payment of the administrative fee, the General Assembly has divided license plates into two categories: 1) chapter 25 special group recognition license plates, which require payment of the administrative fee and 2) non-chapter 25 license plates, which do not. The first prong of the *Collins* test requires us to determine whether requiring payment of the administrative fee is reasonably related to the inherent characteristics of chapter 25 license plates.

Chapter 25 license plates impose additional burdens on the BMV justifying payment of the administrative fee. These additional burdens include the group petition process, design of group license plates, additional handling of group license plates, and monitoring each group's license plate sales. Additionally, all chapter 25 license plates are subject to at least the possibility of the collection of a group fee.[7] The collection of the group fee involves extra effort on the part of the BMV. For example, the BMV must either collect the fee itself or collect notification that the fee has

---

7. As Studler points out, Huntington College and IPFW have chosen not to charge a group fee for their license plates. However, a group may change the status of its group fee at any time prior to July 1 to take effect in the following calendar year. Ind.Code § 9–18–25–17.7. For example, Studler's Brief states that Indiana Wesleyan University also did not charge a group fee for its license plate. However, our research indicates that it currently charges a $25.00 group fee. *See* Indiana Wesleyan University: Alumni, http://www.indwes.edu/alumni/license_plate.htm (last visited November 17, 2008). Therefore, Indiana Wesleyan University apparently exercised its option to change the status of its fee.

been paid. If the BMV collects the fee, as it does for all statutorily-created chapter 25 special group recognition license plates, it must hold the fee in a separate trust fund for each license plate and distribute the proceeds of the fund to the appropriate group on a monthly or annual basis. *See* Ind.Code § 9–18–25–17.7. Based on these additional ministerial tasks, the legislative classification of license plates requiring payment of the administrative fee is reasonably related to the inherent characteristics of the license plates in the class.

Studler argues that this classification system is arbitrary because it leaves two license plates that require a group fee but not the administrative fee ("Hoosier Veteran" and "Support Our Troops") and two license plates which require the administrative fee but not a group fee (Huntington University and IPFW.) In *Collins,* our supreme court stated:

> There is no precise rule of reasonableness of classification, and the rule of equality permits many practical inequalities. A classification having some reasonable basis is not to be condemned merely because it is not framed with such mathematical nicety as to include all within the reason of the classification and to exclude all others.

644 N.E.2d at 80 (quoting *Cincinnati, H. & D. Ry. Co. v. McCullom,* 183 Ind. 556, 561, 109 N.E. 206, 208 (1915), *aff'd* 245 U.S. 632, 38 S.Ct. 64, 62 L.Ed. 521 (1917)).

■ Although the General Assembly does not provide its rationale for exempting the "Hoosier Veteran" and "Support Our Troops" license plates from the administrative fee when all other group fee license plates require payment of the administrative fee, it is reasonable to exempt the license plates either to conform to other military-related license plates or to encourage donations to the military family relief fund, which receives the group fees.

Similarly, although two university license plates do not require payment of a group fee, all university license plates carry the potential to charge a group fee. The individual university, not the BMV, has the power to decide if and when to charge a group fee. Thus, it is reasonable for Indiana to treat these two university license plates similarly to other chapter 25 license plates based upon the potential for a group fee as opposed to treating them similarly to the "In God We Trust" license plate, which has no such potential. Therefore, despite the four apparent inconsistencies, we hold that the General Assembly's chapter 25/non-chapter 25 classification system is not arbitrary.

Studler argues that we should classify the license plates as: 1) license plates displaying a public message and 2) license plates displaying a private message. Within the first class Studler includes license plates designed specifically to express State support for members of the armed forces and license plates designed to promote the State itself (e.g. the standard and "Lincoln's Boyhood Home" license plates). Within the second class Studler includes license plates which allow the motorist to express a private message of support or allegiance to a wide range of public or private groups or ideas (e.g. support for the environment or promoting breast cancer awareness). Studler argues that the "In God We Trust" license plate should be categorized in this latter category because it allows the motorist to express a private message "announcing 'In God We Trust.'" Appellant's Brief at 30. Under Studler's classification, every license plate that promotes a private message requires payment of the administrative fee except for the "In God We Trust" license plate.

Initially, we are not convinced that "In God We Trust," our national motto, can be

categorized as a purely private message since the license plate can be construed to express either a public or private sense of national citizenship or patriotism in addition to a private expression of religious belief. Further, Studler's argument fails to account for several license plates that are not subject to the administrative fee but do not express a public message. For example, Indiana provides license plates for disabled motorists, motorists driving antique vehicles, and motorists who have amateur radio licenses without charging the administrative fee. In any event, the General Assembly chose to classify the license plates as chapter 25 and non-chapter 25 license plates, and, we hold the classification is reasonably related to the inherent characteristics of the license plates. Therefore, the legislative classification survives the first prong of the *Collins* test.

### B. Equal Treatment within the Classes

The second prong of the *Collins* test requires us to consider whether the unequal burden is uniformly applicable to all similarly situated class members. Studler argues that regardless of the classification system, the requirement of paying the administrative fee is not uniformly applicable to all similarly situated license plates, and, as a result, the statutes fail the second prong of the *Collins* test.

#### 1. Chapter 25/non-chapter 25

 Studler argues that not all license plates requiring payment of a group fee are subject to the administrative fee and thus the classification violates the second prong of the *Collins* test. However, the proper legislative classification is not group fee/non-group fee, but rather chapter 25/non-chapter 25. All chapter 25 license plates and no non-chapter 25 license plates, without exception, require payment of the administrative fee. Although the "Hoosier Veteran" and "Support Our Troops" license plates both require payment of a group fee and, thus, seemingly should be included within chapter 25, the General Assembly specifically exempted these license plates from chapter 25 and thus from the administrative fee. *See* Ind. Code §§ 9–18–25–1(12) and (13). Similarly, although two university license plates do not require payment of a group fee and, thus, seemingly should be excluded from chapter 25, the General Assembly reasonably included them within chapter 25 because of the potential to require payment of a group fee at the option of the universities. Therefore the legislative classification system survives the second prong of the *Collins* test.

#### 2. Public/private message classification

 Studler argues, however, that classifying the license plates under a public/private message system leaves only the "In God We Trust" license plate treated differently. Under this system, Studler asserts all license plates that express private messages require payment of the administrative fee except for the "In God We Trust" license plate. Conversely, all license plates which express a public message do not require payment of the administrative fee.

Even accepting Studler's argument as true, this argument alone does not meet his burden of establishing the unconstitutionality of the statutes. It is not enough for Studler to simply find a classification under which the statute is unconstitutional; rather, he must show that no reasonable classifications exist under which the statute would be constitutional. *Baldwin*, 715 N.E.2d at 337. In addition, we must analyze the constitutionality of the statute utilizing the legislative classification unless it appears to be arbitrary or manifestly unreasonable. *Collins*, 644 N.E.2d at 80. As discussed above, the legislative classifica-

tion system is not arbitrary, and the administrative fee is uniformly applicable to all chapter 25 license plates. Therefore, the statutes survive the second prong of the *Collins* test.

### Conclusion

The General Assembly's classification of license plates as chapter 25 and non-chapter 25 license plates is reasonably related to the inherent characteristics of the license plates. In addition, the requirement of paying the administrative fee is equally applicable to all chapter 25 license plates and does not apply to any non-chapter 25 license plates. Therefore, we hold that Indiana Code sections 9–18–24.5–4 and 9–29–5–34.5, offering the "In God We Trust" license plate without the requirement of paying the administrative fee, are constitutional.

Affirmed.

BARNES, J., and CRONE, J., concur.

### ORDER

When this Court issued the Memorandum Decision, marked Not for Publication, on November 17, 2008, this Court determined that publication was unnecessary because the case applied well-settled standards of constitutional law to the facts and did not establish, modify, or clarify a rule of law. *See* Indiana Appellate Rule 65(A)(1). Upon further consideration, this Court has determined that this case "involves a legal or factual issue of unique interest or substantial public importance" and now concludes that the Memorandum Decision should be published. *See* Indiana Appellate Rule 65 (A)(3).

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. This Court's opinion handed down in this cause on November 17, 2008, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

2. The Clerk of the Court is DIRECTED to send copies of said opinion together with copies of this Order to the Thomson Reuters West Publishing Company and to all other companies, services and individuals to whom published opinions are normally sent.