# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARK L. CALLAWAY**
Rensselaer, Indiana

ATTORNEY FOR APPELLEES:

Attorney for Appellees J.D.M. and K.L.M.
**CHARLES P. RICE**
 Boveri Murphy Rice, LLP
 South Bend, Indiana

ATTORNEYS FOR THE STATE OF INDIANA
**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana



FILED

Nov 30 2012, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MATTER OF THE ADOPTION OF MINOR CHILDREN: C.B.M. and C.R.M.: | ) ) ) |
| C.A.B., Appellant-Natural Mother, | ) ) ) |
| vs. | ) No. 37A03-1204-AD-149 ) |
| J.D.M. and K.L.M., Appellees-Adoptive Parents. | ) ) |

APPEAL FROM THE JASPER SUPERIOR COURT
The Honorable James R. Ahler, Judge
Cause No. 37D01-0805-AD-3

**November 30, 2012**

**OPINION -- FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

C.A.B.'s ("Birth Mother") parental rights as to C.B.M. and C.R.M. ("the Children") were terminated by the Jasper Circuit Court ("termination court"). During the pendency of Birth Mother's appeal of the termination order, J.D.M. and K.L.M. ("Adoptive Parents") sought to adopt the Children. The Jasper County Department of Child Services ("DCS") consented to Adoptive Parents' request, even though Birth Mother's appeal remained pending. The Jasper Superior Court ("adoption court") granted the adoption petition, also while Birth Mother's appeal remained pending.

This Court reversed the termination order, after which Birth Mother sought to set aside the adoption decree. In the course of these proceedings, Birth Mother raised issues concerning the constitutionality of Indiana's adoption statutes, and thus the Office of the Attorney General ("the State") entered an appearance and provided briefing in the matter. The adoption court ultimately denied Birth Mother's petition to set aside the adoption decree, and she now appeals that decision.

We reverse and remand for further proceedings.[1]

**Issues**

Birth Mother raises several issues for our review, but we find one issue dispositive: whether DCS's decision to consent to the Children's adoption without notice to Birth Mother

---

[1] We heard oral argument on this case at Greensburg High School in Greensburg, Indiana on September 27, 2012. We thank the school and its students and their guests from North Decatur and South Decatur High Schools for their hospitality, and the parties for their able advocacy.

2

during the pendency of her appeal of the termination order was arbitrary and capricious, and thereby deprived Birth Mother of her due process rights under the Indiana and United States Constitutions.

**Facts and Procedural History**

On January 28, 2008, the termination court ordered Birth Mother's parental rights to Children terminated. Birth Mother appealed the termination order. On September 29, 2008, in a published opinion, this Court reversed the termination order and held that there was insufficient evidence that termination of Birth Mother's parental rights was in Children's best interests. See Moore v. Jasper Cnty. Dep't of Child Servs., 894 N.E.2d 218 (Ind. Ct. App. 2008).

On May 12, 2008, during the pendency of Birth Mother's appeal of the termination order, Adoptive Parents filed their Petition to Adopt the Children. The adoption court granted the petition on July 31, 2008—also during the pendency of Birth Mother's appeal of the termination order.

On January 15, 2009, also in the adoption court, Birth Mother filed her Verified Petition to Set Aside Judgment of Adoption, which alleged that the termination order was void because of this Court's decision of September 29, 2008, and this in turn rendered the adoption decree void. On February 11, 2009, Adoptive Parents filed their Memorandum opposing Birth Mother's Verified Petition.

On July 29, 2009, Birth Mother moved for summary judgment and entry of a declaratory judgment, raising for the first time her Due Process Clause-based challenge to the

3

adoption statutory scheme.

On April 13, 2010, in an apparent effort to comply with Indiana's Uniform Declaratory Judgment Act, Birth Mother provided written notice of her motion for summary judgment to the Office of the Indiana Attorney General.[2] On May 26, 2010, Birth Mother moved for entry of a default judgment against the State as to the constitutionality of the adoption statutes as applied in her case. On June 7, 2010, the State filed its response to Birth Mother's motion for default judgment, arguing that entry of judgment would be erroneous because the State had not been designated as a party to the action nor had yet decided whether to exercise its statutory right to be heard in the case.

On August 31, 2010, Birth Mother, Adoptive Parents, and the State appeared for a hearing on Birth Mother's motion for summary judgment. After this, numerous supplemental materials were submitted concerning Birth Mother's claims, including the State's memorandum concerning the constitutional claims, filed November 9, 2010, and Birth Mother's responsive memorandum, filed January 4, 2011.

On December 27, 2011, the adoption court denied Birth Mother's motion for summary judgment and her petition to set aside the adoption. In the order, the adoption court concluded that Birth Mother failed to properly preserve her rights to challenge the adoption when she did not seek a stay of the termination order. The adoption court did not address Birth Mother's constitutional claims.

---

[2] Indiana Code Section 31-14-1-11 provides for notice to and intervention by the Indiana Attorney General where "a statute, ordinance, or franchise is alleged to be unconstitutional."

On January 26, 2012, Birth Mother filed her motion to correct error. The State filed its response to the motion on February 28, 2012. On March 2, 2012, the adoption court denied the motion to correct error.

This appeal followed.[3]

**Discussion and Decision**

Standard of Review

Birth Mother's challenge to the adoption comes as a motion for relief from judgment under Trial Rule 60(B), which we ordinarily review for an abuse of discretion. Rice v. Comm'r, Ind. Dep't of Envtl. Mgmt., 782 N.E.2d 1000, 1003 (Ind. Ct. App. 2003). The parties agree on the facts of the case, and dispute only questions of law related to the constitutionality and interpretation of certain statutory provisions. In such cases, we review the trial court's decision de novo. Goodson v. Carlson, 888 N.E.2d 217, 220 (Ind. Ct. App. 2008) (reviewing de novo questions of due process and personal jurisdiction). We therefore review Mother's appeal de novo.

Whether Birth Mother's Challenge to the Adoption is precluded under Trial Rule 60(B)

Birth Mother contends that the adoption decree was void because this Court reversed the termination order, and thus the adoption court lacked authority to grant the adoption. Adoptive Parents argue that because the termination order was merely voidable, the adoption

---

[3] On May 31, 2011, Adoptive Father was killed in a motor vehicle accident, of which this Court was notified on July 23, 2012. A review of the trial court records reveals no similar notice to the trial court. We continue to use "Adoptive Parents" in most instances, in order to remain consistent with the conduct of prior proceedings.

5

decree itself was not void and thus Birth Mother's challenge to the adoption decree was not timely.

Trial Rule 60(B)(6), provides that "[o]n motion and upon such terms as are just the court may relieve a party … from a judgment, including a judgment by default, for the following reasons: … the judgment is void." Judgments are void <u>ab initio</u> "where the trial court lacks authority to act." <u>Kitchen v. Kitchen</u>, 953 N.E.2d 646, 651 (Ind. Ct. App. 2011) (citing <u>Beanblossom v. State</u>, 637 N.E.2d 1345, 1349 (Ind. Ct. App. 1994)). Where personal jurisdiction was lacking—that is, where imposition of judgment amounted to a violation of due process—our Supreme Court has held that "a judgment that is void for lack of personal jurisdiction may be collaterally attacked at any time and that the 'reasonable time' limitation under Rule 60(B)(6) means no time limit." <u>Stidham</u>, 698 N.E.2d at 1156.

Whether a judgment is void or voidable is "no mere semantic quibble." <u>Stidham v. Whelchel</u>, 698 N.E.2d 1152, 1154 (Ind. 1998). Where a judgment is void it is "'from its inception … a complete nullity and without legal effect.'" <u>Id.</u> (quoting 46 Am. Jur. 2d <u>Judgments</u> § 31 (1994)). "By contrast, a voidable judgment 'is not a nullity, and is capable of confirmation or ratification. Until superseded, reversed, or vacated it is binding, enforceable, and has all the ordinary attributes and consequences of a valid judgment.'" <u>Id.</u> (quoting 46 Am. Jur. 2d <u>Judgments</u> § 30 (1994)). Based upon this distinction, our Supreme Court concluded that where a trial court lacked personal jurisdiction over an essential party to an action, the trial court's judgment was void <u>ab initio</u> and subject to collateral attack. <u>Id.</u> at 1156.

6

It is clear that the termination order was merely voidable, as this Court did not declare the order void, but instead reversed the order for insufficient evidence. It was thus capable of being corrected and was not void. See id. at 1154. We therefore conclude that the reversed termination order does not itself render the adoption decree void. Yet because we reach a conclusion today that the adoption decree is void on different grounds, we now turn to the merits of Birth Mother's appeal.

### Construction of the Adoption and Termination Statutes

Birth Mother contends that the statutory scheme, which permits the adoption of children whose parents' appeal of a court-ordered termination of parental rights as to those children remains pending, is unconstitutional as applied in her case. Where a party challenges the constitutionality of a statute, we review the trial court's decision de novo. Lock v. State, 971 N.E.2d 71, 74 (Ind. 2012). We are not a legislature, however, and we do not "'substitute our convictions as to the desirability or wisdom of legislation for those of our elected representatives.'" Id. (quoting State v. Downey, 476 N.E.2d 121, 122 (Ind. 1985)). We presume statutes to be constitutional, and the burden rests with the party challenging the statute "to prove otherwise." Id. Further,

> [i]f a statute has two reasonable interpretations, one constitutional and the other not, we will choose the interpretation that will uphold the constitutionality of the statute. Id. We do not presume that the General Assembly violated the constitution unless the unambiguous language of the statute so mandates. Id. This Court should "nullify a statute on constitutional grounds only where such result is clearly rational and necessary." Bd. of Comm'rs of the County of Howard v. Kokomo City Plan Comm'n, 263 Ind. 282, 330 N.E.2d 92, 95 (1975).

7

Sims v. United States Fid. & Guar. Co., 782 N.E.2d 345, 349 (Ind. 2003).

Thus, even in the face of ambiguity, if we may properly interpret the statutory scheme in a manner that renders it constitutional, we may not hold the scheme unconstitutional. We turn now to examine the applicable provisions of the adoption and termination of parental rights statutes.

Indiana's adoption statutes require that a petitioner who seeks to adopt another's child must provide notice to and obtain consent from the child's parents, or otherwise demonstrate that such notice or consent is unnecessary. See I.C. §§ 31-19-2.5-1 to -5 and 31-19-10-1 & -1.2. There are numerous exceptions to both the notice and consent requirements, however, and the statutory provisions at issue in this case largely cut off the natural parents of a child from any involvement in the adoption process after court-ordered termination of parental rights. Thus, "[n]otice of the pendency of the adoption proceedings does not have to be given to … a person whose parental rights have been terminated before the entry of a final decree of adoption." I.C. § 31-19-2.5-4(4). Moreover, a trial court "may hear and grant a petition for adoption even if an appeal of a decision regarding the termination of a parent-child relationship is pending." I.C. § 31-19-11-6.

The statutes allow for a limited exception to this:

[i]f a person whose parental rights are terminated by the entry of an adoption decree challenges the adoption decree not more than the later of:

(1)     six (6) months after the entry of an adoption decree; or

(2)     one (1) year after the adoptive parents obtain custody of the child;

8

the court shall sustain the adoption decree unless the person challenging the adoption decree establishes, by clear and convincing evidence, that modifying or setting aside the adoption decree is in the child's best interests.

I.C. § 31-19-14-2 (emphasis added).

Where a petitioner establishes or statute provides that notice of an adoption proceeding is not required, the petitioner need not obtain consent to the adoption from the parties who would otherwise be entitled to notice of the proceedings. I.C. §§ 31-19-9-8 & 31-19-10-1.2. Where a prior court order terminated an individual's parental rights and a child is in the care of the State, the State through a local office of DCS must consent to the adoption unless the adoptive parents can prove by clear and convincing evidence that such consent is not required. I.C. §§ 31-19-10-0.5, 31-19-9-1(a)(3), 31-19-9-8(a)(1) & 31-19-10-1.2(d); In re Adoption of H.L.W., Jr., 931 N.E.2d 400, 408 (Ind. Ct. App. 2010).

There is no statutory provision that sets forth criteria based upon which DCS must determine whether to grant its consent to an adoption. Thus, whether to consent to a child's adoption is a matter within DCS's discretion, and the trial court must exercise its discretion to determine whether a prospective adoptive parent's adoption of a child is in the child's best interest. This is so even during the pendency of an appeal terminating a parent's rights. I.C. § 31-19-11-6.

That is not to say that there is no constitutional requirement of notice separate from the provisions of the statutes. Rather, the statutes do not by their own language require notice and consent, leaving it to the courts to construe the statute in light of the totality of the statutory scheme and constitutional due process requirements. Because the adoption statutes

9

do not require a due process deprivation, however, we cannot conclude that they are unconstitutional.

### Due Process Requirements for Notice of Adoption after Court-Ordered Termination of Parental Rights

In this case, DCS was the only party common to both Birth Mother's appeal of the termination order and Adoptive Parents' petition for adoption. Yet DCS consented to the Adoptive Parents' request, knowing that Birth Mother's appeal remained pending throughout and beyond the duration of the adoption proceedings. There is no indication that DCS made known to this Court that it had consented to the adoption during the pendency of Birth Mother's appeal of the termination order. This Court reversed that order on September 29, 2008—approximately 9 months after the adoption decree. It was only that termination order that made DCS the necessary party to the adoption proceedings, rather than Birth Mother.

Longstanding common-law and statutory principles provide for judicial relief from arbitrary and capricious agency actions that "directly and substantially affect the lives and property of the public." A.B. v. State, 949 N.E.2d 1204, 1218 (Ind. 2011) (quoting State ex rel. Smitherman v. Davis, 238 Ind. 563, 569, 151 N.E.2d 495, 489 (1958)). The Indiana Administrative Orders and Proceedings Act ("AOPA") affords "minimum procedural rights and imposes minimum procedural duties" in discretionary actions taken by DCS, even where there is no clear procedure for appeal of such a decision under Indiana statute. I.C. § 4-21.5-2-1; A.B., 949 N.E.2d at 1216-17 (applying AOPA standards of review to appellate review of discretionary DCS actions).

AOPA affords judicial relief where an agency action is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

I.C. § 4-21.5-5-14(d).

Our Supreme Court has set forth the standard of review from agency actions under

Section 4-21.5-5-14(d):

The standard of review of an administrative agency decision is narrow. Board of Trustees of Knox County v. Sullivan, 965 F.2d 558, 564 (7th Cir. 1992), cert. denied, 506 U.S. 1078, 113 S.Ct. 1043, 122 L.Ed.2d 353 (1993). An agency decision may be reversed by an appellate court only where it is purely arbitrary, or an error of law has been made. Indiana State Bd. of Public Welfare v. Tioga Pines Living Center, Inc., 622 N.E.2d 935, 939 (Ind. 1993), cert. denied, 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). See also Ind.Code § 4–21.5–5–14(d) (1993). An action of an administrative agency is arbitrary and capricious only where there is no reasonable basis for the action. Natural Resources Comm'n v. Sugar Creek Mobile Estates, 646 N.E.2d 61, 64 (Ind. Ct. App. 1995), trans. denied.

Ind. Civil Rights Comm'n v. Delaware Cnty. Circuit Court, 668 N.E.2d 1219, 1221 (Ind. 1996). Put another way, "[a]n arbitrary and capricious decision is one which is 'patently unreasonable' and is 'made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion.'" A.B., 949 N.E.2d at 1217 (quoting City of Indianapolis v. Woods, 703 N.E.2d

11

1087, 1091 (Ind. Ct. App. 1998)).

An agency decision is arbitrary and capricious where it deprives an affected individual of due process. The Fourteenth Amendment of the United States Constitution provides, "No State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. This Court has repeatedly noted that "the right to raise one's children is more basic, essential, and precious than property rights and is protected by the Due Process Clause." Hite v. Vanderburgh Cnty. Office of Family & Children, 845 N.E.2d 175, 181 (Ind. Ct. App. 2006). "Although due process has never been precisely defined, the phrase expresses the requirement of 'fundamental fairness.'" In re M.M., 733 N.E.2d 6, 10 (Ind. Ct. App. 2000) (citing E.P. v. Marion Cnty. Office of Family & Children, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995)). "The 'right to be heard before being condemned to suffer grievous loss of any kind … is a principle basic to our society.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)).

Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Due process is not, however, "'a technical conception with a fixed content unrelated to time, place, and circumstances.'" Id. at 334 (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)). Rather, due process "'is flexible and calls for such procedural protections as the particular situation demands.'" Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Where state action is alleged to have deprived an individual of due process rights, we

balance three factors to determine whether those rights have been violated:

> (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest in supporting use of the challenged procedure. This court must first identify the precise nature of the private interest threatened by the State before we can properly evaluate the adequacy of the State's process.

In re E.E., 853 N.E.2d 1037, 1043 (Ind. Ct. App. 2006) (citations omitted), trans. denied.

Here, Birth Mother's parental rights were terminated on January 28, 2008. She timely appealed. This Court reversed the order that terminated Birth Mother's parental rights on September 29, 2008, because DCS had failed to produce sufficient evidence under the termination statutes. That is to say, DCS moved prematurely to terminate Birth Mother's parental rights. And, although there is an expedited process in place to review these appeals, see Ind. Appellate Rule 21(A), DCS nevertheless consented to the adoption of the Children while Birth Mother's appeal was pending. This gutted Birth Mother's only true remedy on appeal: a reversal of the termination order that would keep the disposition plan in place until either DCS could prove its case for termination or Birth Mother could satisfy DCS that the Children could be returned safely to her care.

There is nothing in the record to suggest that DCS informed either Birth Mother or this Court that the adoption was proceeding during the pendency of the appeal. Adoptive Parents and the State now argue that Birth Mother's present challenge to the adoption is moot because its basis—the invalidity of the termination order upon appeal—was rendered of no effect by the adoption itself. Put another way, the Appellees' rationale suggests that this Court's reversal of the termination order has no effect because DCS—that is, a state

13

administrative agency—took action to preclude our review of the termination order. Although Birth Mother would have no avenue for substantive relief as a practical matter, the State argues that this is an appropriate result.

Yet, whatever power the State may have through DCS, an administrative agency of the executive branch, its power does not encompass arbitrary and capricious acts—especially where its actions cut off the constitutionally guaranteed right to an appeal that may afford relief. See Ind. Const. Art. 7, sec. 6 (providing "in all cases an absolute right to one appeal"). Ironically, the State argues that such an outcome serves the State's, the Children's, and the Adoptive Parents' interests in finality through a quick resolution of the Children's placement.

We do not agree.

First, as previously noted, this Court has put into place an expedited process for resolving appeals from a trial court's order terminating parental rights. This process seeks to serve the very interests the State now points to as the basis for holding the termination order moot, while also ensuring the due process rights of all involved. These rights include Birth Mother's substantive due process rights—rights which this Court and our Supreme Court have repeatedly stated are more dear than property rights. See Hite, 845 N.E.2d at 181. The State now asks that we reach a conclusion that not only short-circuits this process, but permits DCS to foreclose an individual's procedural and substantive due process rights, which are enforced through judicial proceedings. Such an outcome transgresses upon separation of powers principles, which preclude any "person, charged with official duties under one of the [three departments of government]" from exercising "any of the functions of

14

another" except as expressly provided by the Indiana Constitution. Ind. Const. Art. 3, sec. 1.

Second, the facts of this case show that the State's chosen course of action does not serve the interests it seeks to advance. DCS was a party to the appeal of the termination order and consented to the Children's adoption without notice to Birth Mother—indeed, having had her parental rights terminated, the relevant statutory provisions did not require DCS to provide Birth Mother with notice of the adoption proceeding. Yet DCS's decision to give its consent to the adoption, together with the adoption court's grant of Adoptive Parents' petition, resulted in Birth Mother's petition to set aside the adoption. As of this Court's opinion today, the litigation has run for more than 3 ½ years without final resolution; while some delay is attributable to Birth Mother, much of this delay is also attributable to the State, which asked for several continuances for filing its brief before the trial court.[4] None of this serves anyone's interest in finality.

Additionally, were we to adopt the State's position, we would shift the burden of proof to the birth parents—an overwhelming burden under the circumstances, in that it would require proof by clear and convincing evidence that the adoption was inappropriate and that

---

[4] More troubling than all of this is that much of the blame for this delay rests with the adoption court, which left Birth Mother's motion for summary judgment pending from July 29, 2009 until December 27, 2011—a span of nearly 2 ½ years, and nearly a year after Birth Mother's memorandum in response to the State's trial-court briefing. Though this period well exceeded the parameters under which a special judge could be obtained under Trial Rules 53.1 and 53.2 (the so-called "lazy judge" rules), during oral argument counsel for Birth Mother indicated that he was loath to antagonize a trial court before which he frequently practiced. It is for this reason that our Supreme Court changed the procedure under which appointment of a special judge may be sought under our trial rules. We also observe that in matters of such importance as the disposition of children in an adoption matter, this Court has implemented expedited procedures to ensure timely consideration of such cases. It seems to us that trial courts should similarly turn to such cases in an expedited fashion, and we cannot reconcile the speed with which the adoption court moved to approve the adoption with the extreme delays in its consideration of Birth Mother's motion for summary judgment.

15

placement of children (perhaps long removed from the home) with birth parents is in the children's best interests. This would only magnify the burden upon Birth Mother, who, having succeeded in reversing the termination order on appeal, would be forced to prove on the merits that vacation of the adoption decree was in the best interests of the Children.

We therefore conclude that DCS's decision to consent to the adoption was an arbitrary and capricious agency action that violated Birth Mother's due process rights. It is true that Indiana statutes provide for an adoption to move forward even during an ongoing appeal of an order terminating parental rights, leaving such decisions in the discretion of our trial courts. However, those provisions do not operate in isolation from the other provisions of the adoption statutes, or in isolation from rights that the Indiana and United States Constitutions guarantee our citizens.

The State's consent to the adoption deprived Birth Mother of her due process right to meaningful appeal of the termination order. We are thus compelled to conclude that the consent was wrongfully given.[5] As the Children's legal custodian, discretion to consent to the adoption rested with DCS. DCS abused that discretion. This in turn rendered the adoption decree void because there was no other party capable of giving consent. Coming during the pendency of Birth Mother's appeal, the consent and the adoption decree worked to deprive Birth Mother of her due process right to a meaningful appeal of the termination

---

[5] Indeed, we note that the Deputy Attorney General who appeared before this Court acknowledged during oral argument that the Jasper County DCS office's consent to the adoption before the resolution of Birth Mother's appeal of the termination order was unusual.

order.

Having reached that conclusion, we must therefore hold, however reluctantly, that the Children's adoption by their Adoptive Parents must be set aside because of DCS's wrongful conduct in this case.

Where, as here, DCS is aware of a pending appeal of the termination of a parent's rights but consents to the adoption of the children covered by a termination order, it is incumbent upon DCS to provide notice of the adoption proceedings. Holding otherwise would permit an executive branch agency to determine the nature and extent of a parent's right to meaningful appellate review of a court order disposing of one of the most precious substantive rights afforded to our citizens under the Indiana and United States Constitutions: the right to raise one's children.

We do not hold, however, that the statutory scheme at issue here is unconstitutional either facially or as applied to Birth Mother in this case. The adoption statutes, taken together with existing constitutional guarantees, place upon DCS the burden of honoring due process rights where it has succeeded in an action to terminate a parent's rights and the parent seeks review of the termination order. It is incumbent upon DCS to act in a manner that comports with due process rights where its actions affect the substantive and procedural rights of parents—even those whose parental rights have been terminated. This case is no exception to that requirement.

Because DCS's arbitrary and capricious grant of consent to the Children's adoption renders the adoption decree void, on remand the trial court must grant Birth Mother's petition

to set aside the decree. Adoptive Mother may seek to renew her petition to adopt the children, or DCS may reinstate its CHINS action, and, though we note that the Children have been in Adoptive Parents' care for nearly six years, we take no position today as to the merits of the outcome upon remand.

## Conclusion

The State's consent to the adoption of the Children was arbitrary and capricious and in derogation of Birth Mother's procedural due process right to a meaningful appeal of the termination order. The adoption decree is therefore void. We do not, however, conclude that the statutory scheme for adoption in Indiana is unconstitutional. We therefore reverse the adoption court's denial of Birth Mother's petition to set aside the adoption decree and remand this matter for further proceedings.

Reversed and remanded.

BAKER, J., concurs.

VAIDIK, J., concurs in result with separate opinion.

18

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MATTER OF THE ADOPTION,    )
OF MINOR CHILDREN: C.B.M. and C.R.M.:    )
    )
C.A.B.,    )
    )
    Appellant-Natural Mother    )
    )
    vs.    )    No.  37A03-1204-AD-149
    )
J.D.M and K.L.M.,    )
    )
    Appellees-Adoptive Parents.    )
    )

**VAIDIK, Judge, concurring in result**

I agree with the majority that Birth Mother's due-process rights were violated, she should have received notice of the adoption proceedings, and the adoption decree must be set aside.  I also agree with the majority's conclusion that the adoption statutes at issue are constitutional.  My reasoning, however, is different.  I conclude that the adoption statutes require notice of adoption proceedings to birth parents whose rights have been terminated but who have not exhausted their appeals.

19

Birth Mother's parental rights to her two children were terminated by a trial court in January 2008, and she appealed. This Court reversed the termination order just eight months later. We did so without knowledge that the children were adopted while Birth Mother's appeal was pending. Birth Mother also knew nothing of the adoption proceedings.

At the heart of this case is DCS's claim that Birth Mother received all the procedural due process to which she was entitled—that is, DCS did not have to give Birth Mother notice of the adoption proceedings or obtain her consent to the adoption because her parental rights had been terminated at the trial-court level. Ind. Code §§ 31-19-2.5-4(4), 31-19-9-8(a)(8). Because Birth Mother had a fundamental, substantive right to the care and custody of her children, *In re C.G.*, 954 N.E.2d 910, 916-17 (Ind. 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)), and she had not exhausted all of her appellate remedies when the adoption proceedings were initiated, her due-process rights were violated.

Birth Mother challenges the constitutionality of Indiana's adoption statute, particularly its notice and consent provisions. "When an appellant challenges the constitutionality of a statute, we presume that the statute is constitutional until that presumption is overcome by a contrary showing." *Studler v. Ind. Bureau of Motor Vehicles*, 896 N.E.2d 1156, 1159-60 (Ind. Ct. App. 2008). The party challenging the statute's constitutionality bears the burden of proof, and all doubts will be resolved against that party. *Id.* "The party must demonstrate that no set of circumstances exists that would make the statute constitutional." *Id.* (citing *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999)). If a statute may be construed to

support its constitutionality, we must adopt that construction and find the statute to be constitutional. *Id.*

Indiana Code section 31-19-2.5-4(4) provides that "notice of the pendency of the adoption proceedings does not have to be given to . . . a person whose parental rights have been terminated before the entry of a final decree of adoption." The relevant consent provision, Section 31-19-9-8(a)(8), states that a parent need not consent to the adoption of her child if "[T]he parent-relationship has been terminated under IC 31-35 . . . ." Because we presume these statutes to be constitutional, I would construe their notice and consent exemptions to apply only when a parent's rights have been terminated *as a final matter*— after exhaustion of all appellate remedies. This construction protects a parent's substantive due process right to the care and custody of her children and, by preserving notice and consent, affords an opportunity to be heard at a meaningful time and in a meaningful way.

Reading the statutes in this manner does not preclude a trial court from granting an adoption petition when an appeal of a termination order is pending. *See* Ind. Code § 31-11-19-6. If a birth parent is notified of adoption proceedings, she may consent to the adoption.[6] Or a trial court may determine that the parent's consent is not required. *See* Ind. Code § 31-19-9-8(a)(11). In either instance, the trial court may exercise its discretion and grant an adoption petition despite a pending appeal. The corresponding section of the termination

---

[6] Section 31-35-6-4(a)(2) of the termination statute provides that a parent need not give consent when their rights are terminated by a juvenile or probate court. However, I would read this statute to also refer to termination as a final matter, after exhaustion of a parent's possible appellate remedies.

statute also provides that this may occur. *See* Ind. Code § 31-35-6-3. So long as a parent is given notice of these adoption proceedings, however, such a decision would not run afoul of that parent's due-process rights.

Birth Mother has a substantive due process right to the care and custody of her children. While I conclude that the provisions of the adoption statute challenged here are constitutional, I reach this conclusion by reading the statute to excuse notice of adoption proceedings only when a parent's rights have been terminated as a final matter through exhaustion of all appellate remedies. Birth Mother's children were adopted without notice to her before she had exhausted these remedies. As a result, her due-process rights were violated, and the adoption decree is void. *See In re Adoption of L.D.*, 938 N.E.2d 666, 669 (Ind. 2010) (citing *Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind. 1998)).