ATTORNEY FOR APPELLANT
Mark L. Callaway
Rensselaer, Indiana

ATTORNEY FOR APPELLEES
Charles P. Rice
South Bend, Indiana

ATTORNEYS FOR THE STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE CHILD
ADVOCATES, INC.
Barry A. Chambers
Carey Haley Wong
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

**FILED**
Aug 16 2013, 1:18 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

_____

No. 37S03-1303-AD-159

IN RE THE MATTER OF THE ADOPTION OF MINOR CHILDREN: C.B.M. AND C.R.M.

C.A.B.

*Appellant/Natural Mother,*

v.

J.D.M. AND K.L.M.

*Appellees/Adoptive Parents.*

_____

Appeal from the Jasper Superior Court, No. 37D01-0805-AD-3
The Honorable James R. Ahler, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 37A03-1204-AD-149

_____

**August 16, 2013**

**Rush, Justice.**

The foster parents of C.B.M. and C.R.M. adopted them while their natural mother's termination of parental rights (TPR) appeal was still pending. Our statutes specifically allow those

competing processes to overlap. But choosing to do so creates the devastating possibility of jeopardizing a finalized adoption if the underlying TPR judgment is later reversed on appeal.

That is exactly what happened here, and we cannot unscramble that egg.[1] Either the adoptive family prevails in violation of the natural mother's constitutional rights, or the natural mother prevails at the risk of pulling the children away from the only family they know. But the natural mother's rights, both as a parent and as a litigant with an absolute right to an appeal, are constitutionally protected. We cannot cut corners on those rights, despite our concerns for the children's undoubtedly vital interest in a speedy and permanent placement.

We therefore conclude that the trial court should have set aside the adoption, because the prior TPR "judgment upon which it is based has been reversed or otherwise vacated"—making the adoption voidable under Indiana Trial Rule 60(B)(7). And since a dilemma like this ill-serves the interests of everyone involved, we also offer guidance for mitigating the harsh result in this case, and in any future cases of this type.

### Facts and Procedural History

C.A.B. is the natural mother of fraternal twins C.B.M. and C.R.M. ("Twins"), born in June 2004. Paternity has never been established, and their father's identity is not known. In January 2006, the Twins were determined to be children in need of services (CHINS) and removed from Natural Mother's home. TPR proceedings began against Natural Mother in July 2007, and TPR was granted in January 2008 over the strong objections of the Twins' guardian *ad litem*. Natural Mother promptly appealed the TPR judgment.

In early summer 2008, the Twins' foster parents J.D.M. and K.L.M. ("Adoptive Parents"[2]) petitioned to adopt them. DCS gave its consent to the adoption, which was granted about ten weeks later. None of the parties to the adoption notified Natural Mother of the proceedings, because

---

[1] See generally Kate M. Heideman, Comment, Avoiding the Need to "Unscramble the Egg:" A Proposal for the Automatic Stay of Subsequent Adoption Proceedings When Parents Appeal a Judgment Terminating Their Parental Rights, 24 St. Louis U. Pub. L. Rev. 445 (2005) (discussing Illinois, Michigan, and Missouri cases involving TPRs being reversed on appeal after an adoption had already been granted, and proposing that TPR judgments should be automatically stayed pending appeal to avoid such dilemmas).

[2] In July 2012, while this case was pending before the Court of Appeals, that Court received notice that J.D.M., the adoptive father, was killed in a traffic accident in May 2011. Like the Court of Appeals, we will continue to refer to the Adoptive Parents in the plural, for the sake of consistency with prior proceedings.

notice is not required to a parent whose rights have been terminated. Ind. Code § 31-19-2.5-4(4). Nor did Mother make any effort to file a stay of the trial court's TPR judgment; and DCS made no effort to notify the Court of Appeals that the adoption was pending or that it had consented to the adoption. Mother's TPR appeal was still pending at the time the adoption was finalized.

Just two months later, in September 2008, the Court of Appeals reversed the TPR judgment against Natural Mother. The court held that in view of recent positive changes in Natural Mother's life, DCS had failed to carry its burden of establishing by clear and convincing evidence that the conditions leading to the Twins' removal would not be remedied and that continuing the parent-child relationship would threaten the Twins' well-being. Moore v. Jasper Cnty. Dep't of Child Servs., 894 N.E.2d 218, 228-29 (Ind. Ct. App. 2008). Based on that decision, Natural Mother petitioned the adoption court in January 2009 to set aside the adoption decree. The Adoptive Parents promptly objected.

Ultimately, Natural Mother's petition to set aside the adoption was not resolved until three years later. In July 2009, she moved for summary judgment, arguing that because she was never notified of the adoption, the adoption decree was void for lack of personal jurisdiction; and that the statutes allowing the adoption to proceed during her TPR appeal unconstitutionally deprived her of Due Process. The trial court heard the motion in August 2010, and denied the motion in December 2011. Its ruling agreed with the Adoptive Parents that Natural Mother's constitutional rights were not violated, and that her remedy was to seek a stay of the TPR judgment pending appeal under Indiana Trial Rule 62, which she did not do. The trial court therefore refused to declare the statutes unconstitutional, denied the petition to set aside the adoption, and denied summary judgment. Natural Mother's motion to correct error was also denied, and she appealed.

The Court of Appeals reversed, though it divided on the reasons for doing so. The majority concluded that even though Natural Mother was not entitled by statute to notice of the adoption because her rights had been terminated, DCS nevertheless acted "arbitrarily and capriciously" by failing to provide such notice, and by consenting to the adoption without having done so. In re Adoption of C.B.M. and C.R.M., 979 N.E.2d 174, 185 (Ind. Ct. App. 2012). Judge Vaidik separately concurred, believing the issue was better resolved by construing the adoption statutes to require final *appellate* resolution of TPR cases before dispensing with notice to or consent of the

3

natural parents. Id., 979 N.E.2d at 186. We granted transfer, 984 N.E.2d 221 (Ind. 2013) (table), thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

We now reach the same result as the Court of Appeals, but for a different reason—that because the adoption was based on the TPR judgment, Natural Mother became entitled to set aside the adoption under Trial Rule 60(B)(7) when she prevailed in her TPR appeal.

**Standard of Review**

Relief from judgment under Trial Rule 60 is an equitable remedy within the trial court's discretion. Outback Steakhouse of Fla., Inc. v. Markley, 856 N.E.2d 65, 72 (Ind. 2006). Accordingly, we generally review a trial court's Rule 60 ruling only for abuse of discretion. Id. But when "the trial court rules on a paper record without conducting an evidentiary hearing," as happened here, we are "in as good a position as the trial court . . . to determine the force and effect of the evidence." GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind. 2001) (quoting Farner v. Farner, 480 N.E.2d 251, 257 (Ind. Ct. App.1985)). Under those circumstances, our review is *de novo*. See id. (applying *de novo* review to a motion to dismiss, where trial court resolved disputed facts from a paper record). See also Williams v. Tharp, 934 N.E.2d 1203, 1215 (Ind. Ct. App. 2010), trans. denied (reviewing *de novo* denial of relief under T.R. 60(B)(8) when decision was made on a paper record).

**Analysis**

The parties' dispute centers around two basic issues. First, they disagree about whether the adoption mooted Natural Mother's TPR appeal because of her failure to seek a stay of the TPR judgment pending appeal. Second, they dispute whether letting the Twins be adopted without Natural Mother's notice or consent violated her Due Process rights—which determines whether the adoption was *void* or merely *voidable*, and therefore whether Natural Mother was required to plead and prove a "meritorious defense" to set aside the adoption under Indiana Trial Rule 60(B).

We agree with Natural Mother that her right to set aside the adoption did not depend on staying the TPR. But while the parties' Trial Rule 60(B) arguments take aim at sub-paragraphs (6) and (8), we find the bullseye in between: Under sub-paragraph (7), the adoption was only voidable, but for a reason that does not require Natural Mother to show a meritorious defense (and does not require us to address the constitutional question her "voidness" argument implicates).

4

## I. Undue Delay in Cases Involving Children's Rights.

Before addressing the parties' issues, we pause to address an issue they have not raised—the three-year delay in resolving Natural Mother's petition to set aside the adoption at the trial level. We are gravely troubled by that lengthy delay. Time is of the essence in matters involving children, as the Twins illustrate particularly vividly. They became CHINS at age 1½, their parent-child relationship with Natural Mother was severed at age 4½, and their adoption was challenged at age 5½. They are now age 10, with this dispute still unresolved.

In our Appellate Rules, we have strictly limited the parties' ability to seek extensions of time in cases involving children's rights, and have required ourselves to give them priority consideration. Ind. Appellate Rules 21(A), 35(C)–(D). We applaud the Court of Appeals for its promptness in resolving the previous level of this appeal—and express our firm expectation that parties and courts will do likewise at the trial level, even without being expressly compelled to do so by a comparable Trial Rule.

## II. Staying TPR Judgments Pending Appeal.

At the outset, the Adoptive Parents and Attorney General argue that Natural Mother's TPR appeal was rendered moot when the adoption was granted—and that if she wished to preserve her rights, she should have asked the TPR court to stay its judgment pending her appeal. Without such a request, they reason, the Twins' need for a speedy and permanent placement trumps Natural Mother's rights. In view of the two separate constitutional rights that are implicated by this argument, we cannot agree.

Foremost, despite Natural Mother's struggles, her parental rights are precious and protected by our Federal and State constitutions. Our Supreme Court has "recognized on numerous occasions that the relationship between parent and child is constitutionally protected," Quilloin v. Walcott, 434 U.S. 246, 255 (1978), and that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Santosky v. Kramer, 455 U.S. 745, 753 (1982). Accordingly, "the interest of a parent in the companionship, care, custody, and management of his or her children comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." Stanley v. Illinois, 405 U.S. 645, 651 (1972) (internal quotation and substitution omitted).

Even apart from the importance of Natural Mother's substantive parental rights, Indiana is particularly solicitous of the right to appeal. Article 7, Section 6 of the Indiana Constitution guarantees "in all cases"—including TPR—"an absolute right to one appeal." But her appellate right would mean little if it could be short-circuited by an adoption judgment being issued before her appeal is complete. It would offend her rights as both a mother and an appellate litigant to let her parent-child relationship with the Twins become contingent upon a race to the courthouse, hinging on whether the adoption could be finalized before the TPR appeal was complete.[3]

The Adoptive Parents and Attorney General say it was Natural Mother's sole responsibility to avoid such a "race" by seeking a stay of the TPR judgment pending her appeal. But Court of Appeals precedent suggests otherwise. In Cunningham v. Hiles, 182 Ind. App. 811, 395 N.E.2d 851, 853 (1979), modified on reh'g, 402 N.E.2d 17 (Ind. Ct. App. 1980), the trial court had refused to enjoin construction of a music store on a residential lot, but the Court of Appeals reversed. The store owner then sought rehearing, arguing the appeal was moot because he had built the store in reliance on the trial court's judgment while the appeal was pending—the first time the Court of Appeals had been made aware of that important fact. 402 N.E.2d at 20. The Court's opinion on rehearing made clear that "*the parties* should have informed this Court of the fact that the music store had been constructed," suggesting that the "duty to place such matters before this Court by proper petitions, motions, or challenges by verified pleadings" is shared. 402 N.E.2d at 20 (emphasis added; internal citations, quotations, and substitutions omitted). In so holding, the Court rejected the store owner's claim that the fault lay entirely with the appellants for failing "to seek an appeal bond or otherwise stay enforcement of the denial of the injunction pending the outcome of their appeal," id. at 21 n.4. In sum, despite prevailing at trial, the owner "built the music store at his own peril" while the appeal was pending. Id.

We see this case in a similar light. Natural Mother certainly could have sought a stay of the TPR in hopes of avoiding the dilemma this case presents. Yet DCS was also a party to that

---

[3] We acknowledge the Attorney General's citation to In re Tekela, 780 N.E.2d 304, 309 (Ill. 2002), which held that a TPR appeal does become moot when the children are adopted. But we have found no other case that reaches such a conclusion. Moreover, Illinois has abrogated Tekela by a rule blocking adoptions while a TPR appeal is pending. Ill. Sup. Ct. R. 305(e). A similar statute has avoided these consequences in Michigan as well, In re JK, 661 N.W.2d 216, 224 (Mich. 2003)—and Missouri has established a common-law rule that it is always an abuse of discretion to grant an adoption while a TPR appeal is pending, State ex rel. T.W. v. Ohmer, 133 S.W.3d 41, 43 (Mo. 2004). We agree with Tekela's recognition of a compelling interest in speedy placement and permanency for the children, but we will not advance that policy goal at a natural parent's constitutional expense.

appeal—and unlike Natural Mother, DCS also participated in the adoption, through the power to consent (or not) to the Twins' adoption while the TPR appeal was pending. If anything, then, DCS was in a better position than Natural Mother to make the Court of Appeals aware of "post-judgment events which may affect the outcome of a pending appeal," id. at 20, such as its intent to consent to the adoption. DCS had every right to rely on the trial court's TPR judgment and consent to the adoption while the appeal was still pending, I.C. § 31-19-11-6—but as in Cunningham, such bold reliance came at its own (and thus, the Twins') peril. 402 N.E.2d at 21 n.4.

Accordingly, we decline to hold that Natural Mother was required to file a stay in order to preserve a meaningful appellate remedy for her parental rights, and proceed to the merits of her petition to set aside the adoption.

### III. Setting Aside Adoptions When the Prior TPR Is Reversed.

Reversal of the TPR judgment is significant because consent is ordinarily a vital part of an adoption. "[A] trial court deciding an adoption petition must find that 'proper consent, if consent is necessary, to the adoption has been given.'" In re Adoption of N.W.R., 971 N.E.2d 110, 113 (Ind. Ct. App. 2012) (quoting I.C. § 31-19-11-1(a)(7)). In most cases, that entails notifying the natural parents of the adoption, I.C. § 31-19-2.5-3(a)(1), and obtaining their written consent to it, I.C. § 31-19-9-1(a)(1)–(2). When consent is required, a defect in consent will render the adoption decree invalid, and require the adoption to be reversed and remanded. See N.W.R., 971 N.E.2d at 117 (DCS's consent was required because child was ward of the State; trial court abused its discretion in granting adoption after DCS had sought to withdraw its consent).

But even though notice and consent are generally required, there are two classes of exceptions. One category permits adoption without the natural parent's consent, if the court finds that the parent has abandoned, deserted, or failed to support or communicate with the child, I.C. § 31-19-9-8(a)(1)–(2); or that the parent is legally incompetent or unfit, I.C. § 31-19-9-8(a)(9), (11). In these cases, the natural parent is still entitled to *notice*, I.C. § 31-19-4.5-2, so they can appear and defend against the allegations.

In the other category, though, the natural parent is not even entitled to *notice*. I.C. § 31-19-2.5-4. Generally, this category is based on a prior judicial finding of parental misconduct—

for example, Natural Mother's TPR judgment, I.C. § 31-19-9-8(a)(8); or conviction and incarceration for certain crimes against the child or the child's other parent or sibling. I.C. §§ 31-19-9-9, -10. In these cases, notice is deemed unnecessary because the parent had opportunity to contest the allegation in a prior proceeding—in essence, treating the prior decision as conclusive of the issue.

But what happens when that "conclusive" prior decision is reversed? Even though finality of judgments is a vital policy, it is not absolute, and sometimes yields to broader interests of justice. Trial Rule 60(B) contemplates such situations, providing in relevant part:

> On motion and upon such terms as are just the court may relieve a party . . . from a judgment . . . for the following reasons: * * *
>
> (6) the judgment is void;
>
> (7) the judgment has been satisfied, released, or discharged, *or a prior judgment upon which it is based has been reversed or otherwise vacated*, or it is no longer equitable that the judgment should have prospective application; or
>
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).
>
> . . . . A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

(Emphasis added.) The parties dispute whether the adoption is void under sub-paragraph (6), or merely voidable under sub-paragraph (8), with the latter provision requiring Natural Mother to show a "meritorious defense" to the adoption before she could have it set aside. But we find the answer in the provision in between—that the adoption was merely voidable, but for a reason specifically contemplated by sub-paragraph (7), which requires no meritorious defense.

Under the second clause of Trial Rule 60(B)(7), a judgment may be set aside when "a prior judgment upon which it is based has been reversed or otherwise vacated." That provision "applies only to related judgments where the second judgment is based upon the first judgment, and the first has been reversed or otherwise vacated." Dempsey v. Belanger, 959 N.E.2d 861, 868 (Ind. Ct. App. 2011), trans. denied (quoting 22A Stephen E. Arthur, Indiana Practice: Civil Trial Practice § 37.14 (2d ed. 2007)). Put another way, it applies only when the first judgment "has claim or issue preclusion effects on the second," or provides "a necessary element of the [subsequent] decision." See Kaler v. Bala (In re Racing Servs., Inc.), 571 F.3d 729, 732 (8th Cir. 2009) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 60.46[1] (3d Ed. 2009) and Lubben v. Selective Serv.

<u>Sys. Local Bd. No. 27</u>, 453 F.2d 645, 650 (1st Cir. 1972)) (all construing Fed. R. Civ. P. 60(B)(5)'s similar provision).

Here, the adoption "is based upon" the TPR judgment in the sense <u>Dempsey</u> and <u>Kaler</u> contemplate. If not for the preclusive effect of the prior TPR judgment, the Twins' adoption would have required notice to Natural Mother, I.C. § 31-19-2.5-3(a)(1). Then, if she refused to consent, the adoption would have required proof of an additional element—abandonment, unfitness, or one of the other statutory grounds for dispensing with consent, I.C. § 31-19-9-8(a). Because the TPR let the Adoptive Parents finalize the adoption without either obtaining Natural Mother's consent or proving it was unnecessary, we conclude that the adoption was "based on" the prior TPR judgment. Accordingly, Natural Mother became entitled to relief from the adoption when the TPR was "reversed or otherwise vacated" on appeal.

And since Natural Mother's petition is within 60(B)(7)'s specific provisions, she need not show a "meritorious defense" as sub-paragraph (8) would require. Sub-paragraphs (5) through (7) of Trial Rule 60(B) are expressly exempted from that requirement—seemingly recognizing that those circumstances inherently jeopardize confidence in the integrity of the judicial *process*, even if the *outcome* was unaffected. Adoptive Parents' reliance on the 60(B)(8) "catch-all," and its meritorious defense requirement, is therefore misplaced; Trial Rule 60(B)(7)'s more specific provision is controlling. <u>Rumfelt v. Himes</u>, 438 N.E.2d 980, 983–84 (Ind. 1982) ("[A]s with statutes, a specific rule controls over a general one on the same subject matter.").[4]

We therefore conclude that the trial court abused its discretion by refusing to set aside the Twins' adoption. We understand the trial court's concern for a speedy, permanent placement for the Twins. But a fit parent's rights are fundamental and constitutionally protected, <u>In re Visitation of M.L.B.</u>, 983 N.E.2d 583, 586 (Ind. 2013) (citing <u>Troxel v. Granville</u>, 530 U.S. 57, 64 (2000)), and even a matter as important as the Twins' best interests does not necessarily override that right. <u>Id.</u> Since the only judicial determination that Natural Mother is unfit to retain her parental rights has

---

[4] Resting our conclusion on Trial Rule 60(B)(7) also lets us avoid the constitutional question inherent in Natural Mother's 60(B)(6) argument that the adoption is void on Due Process grounds. We "traditionally foreswear deciding a constitutional question unless no non-constitutional grounds present themselves for resolving the case under consideration." <u>Citizens Nat. Bank of Evansville v. Foster</u>, 668 N.E.2d 1236, 1241 (Ind. 1996).

been overturned on appeal, letting the adoption stand would be an overreach of State power into family integrity. The adoption must be set aside.

## IV. Avoiding a Repeat of This Situation.

We are all too aware of the harsh effects this decision may have on the Twins, and future children who may find themselves similarly situated through no fault of their own. We therefore offer guidance for mitigating those harsh effects in this case, and potentially avoiding them completely in future cases.

Foremost, this case illustrates the wisdom of doing more than "just the bare minimum." Due Process notice requirements are just that—a bare minimum that parties always may, and sometimes ought to, exceed. While the Adoptive Parents were not required to serve notice on Natural Mother, I.C. § 31-19-2.5-4(2)(F), doing so voluntarily may well have saved the adoption from reversal. If Natural Mother had been served, the Adoptive Parents could then have requested a contested adoption hearing for litigating an *alternative* basis for dispensing with consent under Indiana Code section 31-19-9-8(a). Natural Mother would then have been offered a "day in court" independent of the TPR, giving this Court an alternative basis to affirm the adoption—because either she would have appeared and been heard, or else failed to appear and been properly defaulted. We emphasize that such notice is not *required*, and adoptive parents have the statutory right to rely solely on a trial-level TPR judgment and seek adoption pending the TPR appeal. We merely caution that such reliance comes at the adoptive parents' peril. See Cunningham, 402 N.E.2d at 21 n.4.

Second, some of the uncertainty for the Twins could have been avoided if DCS had left the underlying CHINS case open until Mother's TPR appeal was complete. As this case shows, children may have a particularly great "need of services" when a TPR judgment is reversed on appeal. By then, they will have been removed from the parents' home for a substantial time, and will be bonding into a new home—especially when, as here, the foster parents plan to adopt. And the natural parent, even if not unfit, may also be in need of services before the children could appropriately return to their original home. Yet without a CHINS case, there is no ready means to provide the support all the parties here will require while reexamining the Twins' status in light of the TPR reversal. (Indiana Code section 31-9-2-13 could authorize the Adoptive Parents to seek temporary custody of the Twins while the adoption is pending—which may very well be beneficial to the Twins, but falls far short of the services a CHINS case would permit.) We strongly suggest

10

that in the future, DCS's best practice would be to leave underlying CHINS cases open until any related TPR appeal is complete.[5]

Finally, we reiterate that granting an adoption pending TPR appeal is a *discretionary* decision of the trial court. Our Legislature has authorized the practice, and there are surely cases in which it will be entirely appropriate to expedite the adoption. Yet it is only permitted, not required. In view of the potentially devastating consequences of having an adoption invalidated by a TPR appeal, we encourage courts to exercise that authority with an abundance of caution. Speedy permanency for children is vitally important. But balanced against the risk that materialized in this case, a few months' additional delay in granting an adoption may often be preferable.

### Conclusion

There are no winners in some cases, and this is one of them. Ruling in favor of the Adoptive Parents would violate the Natural Mother's constitutional rights, while the opposite ruling would risk pulling the Twins away from the family they have lived with for most of their lives, and the only stable family they have ever known. But despite the Twins' need for permanency, natural parents' consent is a vital condition precedent to most adoptions—and we must take a narrow view of the exceptions to that principle, out of due regard for the limitations of judicial power into family life, even for very imperfect families. Thus, when the TPR judgment in this case was reversed, we must conclude that the no-consent adoption that followed on its heels became voidable under Trial Rule 60(B)(7). The trial court therefore abused its discretion in failing to set aside the adoption.

Accordingly, we reverse the trial court's judgment, and remand with instructions to vacate the adoption decree within seven days of this Court's opinion being certified, to reset the adoption petition for a contested hearing, and to promptly serve notice and summons of that hearing on Natural Mother. Pending that hearing, the trial court could exercise its authority to entertain motions regarding temporary custody of the Twins under Indiana Code section 31-19-2-13, until final judgment is entered.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.

---

[5] We express no opinion about whether DCS may be entitled to reopen the CHINS case under these circumstances.