## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2015, 8:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Amy Karozos
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Miller
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

M.B. (Minor Child)

and

S.B. (Father)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services

*Appellee-Petitioner*

January 30, 2015

Court of Appeals Cause No. 49A04-1407-JT-326

Appeal from the Marion Superior Court
The Honorable Larry Bradley, Magistrate
The Honorable Marilyn A. Moores, Judge
Cause No. 49D09-1312-JT-16342

**Bailey, Judge.**

# Case Summary

[1] S.B. ("Father") appeals the termination of his parental rights to M.B. upon the petition of the Marion County Department of Child Services ("the DCS"). We affirm.

# Issues

[2] Father presents two issues for review:[1]

Whether the trial court abused its discretion by denying his motion for a continuance until such time as his criminal appeal was resolved; and

---

[1] Father articulates a third issue, alleging that he was denied due process in the CHINS proceedings. Procedural irregularities in CHINS proceedings may be so significant that they deprive a parent of procedural due process with respect to the termination of his parental rights. *A.P. v. Porter Cnty. Office of Family & Children*, 734 N.E.2d 1107, 1112-13 (Ind. Ct. App. 2000), *trans. denied*. Father asserts he was denied due process because the DCS did not – during Father's incarceration – "make reasonable efforts to preserve the family as is required by law." Appellant's Br. at 21. However, Father concedes that the DCS need not, in termination proceedings, plead and prove its provision of services because such is not a requisite element to support termination of parental rights. *See In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) (recognizing that provision of services is not a requisite element of the termination statute and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law). However, Father baldly asserts in his Reply Brief that he was denied due process because "Father was not on notice that he risked termination of his parental rights by not completing services while incarcerated." Reply Brief at 6. He fails to direct us to any testimony or other evidence concerning CHINS advisements to Father or Father's knowledge of termination procedures. Because Father presents no cogent argument supported by relevant authority and appropriate record citation as to his alleged denial of due process in the CHINS proceedings, we do not address the purported issue. *See* Ind. Appellate Rule 46(A)(8)(a).

Whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.

# Facts and Procedural History

On December 24, 2012, M.B. was born and tested positive for cocaine and opiates. At the hospital, M.B. was removed from the care of her mother.[2] The DCS alleged M.B. to be a Child in Need of Services ("CHINS") and further alleged that her father was unknown. M.B. was found to be a CHINS.

In early 2013, Father was incarcerated at the Marion County Jail when he encountered DCS caseworker Kiyanna Harris ("Harris") and informed Harris that M.B. was his child. Paternity was established in Father following DNA testing.

Later in 2013, Father was convicted of Possession of a Firearm by a Serious Violent Felon. He was sentenced to twelve years imprisonment.

On December 27, 2013, the DCS petitioned for termination of Father's parental rights. During the pendency of that action, Father's criminal conviction was

---

[2] The mother's parental rights were eventually terminated and she is not an active party to this appeal.

reversed by a panel of this Court. *Blount v. State*, 4 N.E.3d 787 (Ind. Ct. App. 2014). The State sought transfer to the Indiana Supreme Court and Father remained incarcerated.

[7] On June 9, 2014, the DCS and Father's counsel appeared for an evidentiary hearing in the termination proceeding. At the outset of the hearing, Father's counsel advised the trial court of the developments in the criminal case and requested a continuance in the termination case. The DCS opposed a continuance, observing that Father had a history of incarceration. The trial court proceeded with the hearing, at which Father appeared telephonically.

[8] On June 18, 2014, the trial court issued an order terminating Father's parental rights. This appeal ensued.

# Discussion and Decision

## Motion for Continuance

[9] A ruling on a non-statutory motion for a continuance is within the sound discretion of the trial court. *J.M. v. Marion Cnty. Office of Family and Children*, 802 N.E.2d 40, 43 (Ind. Ct. App. 2004), *trans. denied*. The trial court is afforded discretion to "act in accord with what is fair and equitable in each circumstance" and its decision will be reversed only upon a showing of an abuse of discretion and prejudice resulting from such an abuse. *Id*.

[10] Here, Father can show no prejudice resulting from the denial of his motion to continue the proceedings until resolution of his criminal appeal. On December

17, 2014, finding that the admission of hearsay evidence at Father's trial was harmless, the Indiana Supreme Court affirmed Father's conviction. *Blount v. State*, WL 7181352 (Ind. 2014). Accordingly, Father is subject to a twelve-year criminal sentence. During this time, he would be unable to provide for M.B.'s care. Father has failed to demonstrate an abuse of discretion and resultant prejudice.[3]

## Sufficiency of the Evidence

### Standard of Review

[11]	Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

---

[3] Even so, we observe that motions for continuances of termination proceedings pending the resolution of criminal appeals should not be denied as a matter of routine course. A litigant such as Father has constitutionally protected rights, both as a parent and as a litigant with an absolute right to an appeal. Our Indiana Supreme Court has reiterated that "parental rights are precious and protected by our Federal and State constitutions" and that "Indiana is particularly solicitous of the right to appeal," guaranteeing an absolute right to one appeal in all cases. *In re Adoption of C.B.M.*, 992 N.E.2d 687, 692 (Ind. 2013).

We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.  *Id.*

## Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities.  *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).  The purpose of terminating parental rights is not to punish the parents, but to protect their children.  *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)      The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)      A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)      The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:

> (i)      There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)      There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii)      The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[14]      If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship.  I.C. § 31-35-2-8(a).  A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.  The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child."  *Id.*

## Analysis

[15]      Father contends that insufficient evidence supports the termination order.  He does not challenge the trial court's determinations pursuant to Sections 31-35-2-4(b)(2)(A) (removal from parent), or (D) (satisfactory plan).  He challenges the determinations relating to Sections 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being) and (C) (best interests).

[16] Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. *See L.S.*, 717 N.E.2d at 209. Because we find it to be dispositive under the facts of this case, we consider only whether the DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*.

[17] Initially, the DCS removed M.B. from her mother's care because M.B. was born with drugs in her bloodstream and her mother admitted having used cocaine and heroin during her pregnancy. At the time of M.B.'s birth, Father was incarcerated on a felony charge.

[18] Father, born in 1981, has been incarcerated for much of his adult life. In 2006, he was convicted of Attempted Robbery. In 2007, he was convicted of Possession of Paraphernalia. The following year, he was convicted of Possession of Paraphernalia, Fraud, and Theft. In 2010, he was convicted of Possession of Cocaine. In 2013, he was convicted of Unlawful Possession of a Firearm by a Serious Violent Felon. His earliest projected release date is November 5, 2018.

[19] Father has never met M.B. He has four other children and has established paternity with respect to one of them. Previously, he paid two dollars per week for the support of that child. As of the time of the termination hearing, Father was not paying child support. He testified that he was currently unable to parent M.B.

[20] The DCS presented clear and convincing evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied.

[21] As for the best interests of M.B., Father's one-paragraph argument consists of his assertion that the DCS was required to show that he would be unable to care for M.B. upon his release from incarceration and also to show that termination of parental rights was preferable to continuing foster care or allowing M.B. to live with a paternal relative. He does not accurately portray the burden of proof upon the DCS when the trial court is asked to determine the best interests of a child in a termination proceeding.

[22] In determining what is in a child's best interests, the trial court is required to look beyond the factors identified by the DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests."

*Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*.

[23] Here, the trial court's findings included the following: Father had been incarcerated throughout M.B.'s life; Father had been convicted of several felonies and had been in and out of jail throughout his adult life; Father had never met M.B.; M.B. was in a pre-adoptive placement with her half-sibling; M.B. was bonded with her pre-adoptive family; and the Guardian Ad Litem recommended adoption as being in M.B.'s best interests. The findings of fact adequately support the conclusion that termination of Father's parental rights was in M.B.'s best interests.

# Conclusion

[24] Father has shown no abuse of discretion in the trial court's ruling on a motion for a continuance. The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

[25] Affirmed.

Robb, J., and Brown, J., concur.