## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 12 2017, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of: C.T.W. and K.R.W., Children Alleged to be in Need of Services, | April 12, 2017 |
| W.D.T. (a/k/a: D.C.) (Father), | Court of Appeals Case No. 02A03-1609-JC-2068 |
| *Appellant-Respondent*, | Appeal from the Allen Superior Court |
| v. | The Honorable Sherry A. Hartzler, Magistrate |
| The Indiana Department of Child Services, | The Honorable Charles F. Pratt, Judge |
| *Appellee-Petitioner*. | Trial Court Cause Nos. 02D08-1606-JC-281 02D08-1606-JC-282 |

**Brown, Judge.**

[1] W.D.T. (a/k/a D.C.) ("Father") appeals the juvenile court's denial of his Motion to Set Aside Admissions and Findings and Request for Fact Finding. He raises one issue which we revise and restate as whether the juvenile court abused its discretion in denying his motion. We affirm.

## Facts and Procedural History

[2] On June 10, 2016, the Indiana Department of Child Services ("DCS") filed a verified petition alleging C.T.W., born June 9, 2007, and K.R.W., born July 3, 2009, (the "Children") to be children in need of services ("CHINS"). DCS alleged that the Children's physical or mental condition was seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the Children's parent, guardian, or custodian to supply them with necessary food, clothing, shelter, medical care, education, or supervision. In the petition, DCS alleged that Father was the alleged father of the Children and had not established paternity of them. Under the heading "Allegations Regarding the Alleged Father," DCS asserted that Father required the intervention of the court in order to receive support and services to assist him in providing appropriate care and supervision for the Children "based on the information set forth herein, and as set forth in the Preliminary Inquiry Report, which is incorporated by reference." Appellant's Appendix II at 42 (capitalization omitted).

[3] The June 10, 2016 Report of Preliminary Inquiry and Investigation alleged that law enforcement were called to the Coliseum Inn for a disturbance, detectives obtained a copy of the room rental receipt stating that room #130 was in

Father's name, and K.R.W. was found in a hotel room with no adults present and with a small box of sandwich baggies, marijuana, an ash tray with a burnt blunt, and cereal boxes containing large bags of Spice. The report indicated that Father admitted to using Spice and that A.W. ("Mother") also smoked Spice. The report also stated that Mother and Father were both arrested on June 8, 2016 for neglect of a dependent, there was an active protective order against Father for Mother, Father was previously convicted of invasion of privacy on August 26, 2015 and possession of cocaine on June 1, 2009, and that Father also had charges for dealing in a synthetic drug or synthetic drug lookalike, maintaining a common nuisance, invasion of privacy, and possession of marijuana with a prior drug conviction. According to the report, Father left K.R.W. in the room to have a relationship with another woman and stated that he did not think that children "need to be watched 24/7." Appellee's Appendix II at 3. It also indicated that K.R.W. described a blunt, disclosed that her parents and brother stayed in the hotel room, that they smoke weed, and that her Mother threw a phone and it broke. The report asserted that a family case manager interviewed Father, he appeared to be under the influence of some sort of substance, and he initially stated that he would take a drug screen but then said that he wanted an attorney present before he submitted. It also stated that a family case manager reported there was a sign of a struggle in the room and that K.R.W. said she does not feel safe when her parents argue.

[4]     On June 10, 2016, the court held a hearing.[1]  A chronological case summary ("CCS") entry dated June 13, 2016, indicates that Father was present at a telephone conference and states: "The Court having entered its Order in open court, now issues the following written order for the hearing held on June 10, 2016.  [P]robable cause does exist to believe that the [Children] are [CHINS] as defined by I.C. 31-34-1-1.  The [DCS] is authorized to file a petition[.]  An immediate Initial Hearing is ordered held."  Appellant's Appendix II at 10. Another CCS entry dated June 13, 2016, also referenced the June 10, 2016 hearing, and indicated that an attorney was appointed to represent Father, the Children had been removed from the parents' home, Father would have supervised visitation with the Children, and that "reasonable efforts to prevent or eliminate removal of the [Children] were not required due to the emergency nature of the situation, the need to secure the [Children's] immediate safety precluded pre-placement preventative and/or reunification services."  *Id*.

[5]     On July 6, 2016, at 8:21 a.m., DCS filed an amended verified petition alleging the Children were CHINS and asserted that law enforcement officers responded to the Coliseum Inn with respect to a report of a "big fight" on June 8, 2016; K.R.W. was found in a hotel room at the inn, which was littered with drug paraphernalia, digital drug scales, marijuana, a broken phone, assorted trash, and large bags of Spice stuffed into cereal boxes; Father was leasing the room; an active protective order prohibited contact between Father and Mother; and

---

[1] The record does not contain a transcript of this hearing.

Father was detained by law enforcement and charged with dealing a synthetic drug or synthetic lookalike, maintaining a common nuisance, neglect of a dependent, invasion of privacy, and possession of marijuana. The petition further alleged that Father admitted to smoking Spice with Mother; he had previous convictions; he admitted that he left K.R.W. alone and unsupervised in the hotel room to have a relationship with another woman in the hotel; he stated that he did not believe that children need to be watched 24/7; he refused to submit to a drug screen after first agreeing to do so; and Father could benefit from the intervention of the court to provide services for himself and the Children which he could not or would not be able to obtain without court intervention. *Id.* at 37.

[6] On that same day, a facilitation occurred, and the court then held a hearing at which Father was represented by counsel. A CCS entry dated July 6, 2016, states: "7/6/2016 4:24:24 PM Additional Initial and Dispositional on 7/6/2016 at 2:30 PM (Hearing Held)." *Id.* at 8. At the hearing, the court indicated that it had been handed a video of advisement of rights form that Father signed, and Father indicated that he did not have any questions about his rights. DCS's counsel stated that Father admitted some of the paragraphs, admitted some with modifications, and denied others. Specifically, Father admitted he was the father of the Children; law enforcement officers responded to a call involving a report of a fight at the Coliseum Inn on June 8, 2016; K.R.W. was found in room #130; he was leasing the room; there is an active protective order which prohibits contact between him and Mother; and he was detained that day by

law enforcement and charged with dealing a synthetic drug or synthetic lookalike, maintaining a common nuisance, neglect of a dependent, invasion of privacy, and possession of marijuana. He also admitted to smoking Spice; that he has prior criminal convictions for invasion of privacy and possession of cocaine; that he stated on June 8, 2016, that he does not believe children need to be watched 24/7; and that he could benefit from the intervention of the court to provide services for himself and the Children which he cannot currently obtain without court intervention. Father's counsel indicated that the summary by the DCS's attorney was "what we discussed in facilitation and what was agreed upon." July 6, 2016 Transcript at 7.

[7] When asked by the court if he had any comments regarding the predispositional report, Father's counsel stated: "No Judge obviously there are ongoing criminal implications with this case and that's why we very narrowly tailored what we acknowledged and admitted what happened um and we are prepared to move to Dispositional." *Id.* The court then asked the facilitator to read the services that were laid out in the parent participation plan. Father stated: "Ah excuse me um I thought y'all said they wasn't going to go through that until after she made her disposition." *Id.* at 8. The court indicated that it found that the Children were CHINS and that "we're in the plan for services in the Dispositional now." *Id.* Father stated: "All right." *Id.* Suzanne Lange, the facilitator, detailed the participation plan with respect to Father, and Father indicated that he agreed to complete those services. On July 8, 2016, the court entered an Order on Dispositional Hearing.

[8] On July 22, 2016, Father filed a Motion to Set Aside Admissions and Findings and Request for Fact Finding. He argued that he had insufficient time to review the pleadings prior to the initial hearing because he was brought from jail minutes before the continued initial hearing, he met with counsel to review materials and discuss the case minutes before the hearing, and "he was handed a folder containing all pleadings by the State minutes before the continued initial hearing was held." Appellant's Appendix II at 33.

[9] A hearing was held on August 1, 2016. Father's counsel indicated that the July 22nd motion essentially asked for relief under Trial Rule 60. Father indicated that he did not have an adequate understanding of the implications of his actions at the last hearing and that he did not have time to consult with his attorney about those implications, the procedure, and the allegations. He testified that he received the petition alleging the Children were CHINS on the "day of the Initial Hearing and dis. . . deposition [sic] the day of." August 1, 2016 Transcript at 7. Father's counsel argued that "everybody knew where he was there was no reason to hand him something minutes before he goes to facilitation." *Id*.

[10] DCS's counsel argued that Father was appointed an attorney on June 13, 2016, he was informed of his rights multiple times, the allegations in the amended petition were drawn from the report he was handed on June 13th, the facilitation and hearing was scheduled for 2:30 p.m. on July 6th and the actual disposition time was 4:24 p.m. so about two hours had elapsed from that time, and there was time available for Father to meet with his attorney. DCS's counsel pointed

out that Father went through the allegations and made amendments before meeting with the court at the hearing.

[11] On August 2, 2016, the court entered an order stating in part:

> 5. The Court finds that on June 10, 2016, a Preliminary Inquiry Hearing was held at which [Father] was advised of his rights. On this date, the Court found probable cause and appointed counsel . . . to represent [Father].
>
> 6. The Court finds that on June 10, 2016, [Father] was served with summons and notice of hearing; Verified Petition Alleging Children to be in Need of Services; and a copy of the Preliminary Inquiry Report incorporated by reference into the Verified Petition Alleging Children to be in Need of Services.
>
> 7. On July 6, 2016, an Amended Petition Alleging Children to be in Need of Services was filed and a facilitation was held at the Allen Superior Court for which [Father] was transported from the Allen County Jail and participated.
>
> 8. Pursuant to Allen County Local Rule **LR02-JV00-737**, in relevant part:
>
> **Children in Need of Services – Facilitation of Initial Hearings and Dispositional Hearings**
>
> **Facilitation** – Immediately preceding the Initial Hearing on a petition to adjudicate a child to be a child in need of services, or at a time otherwise directed by the court, a facilitation shall be conducted.

**Facilitation defined** – Facilitation is a confidential process in which a neutral third person, appointed by the court, acts to encourage and to assist the parties in achieving a non-adversarial resolution to the allegations set forth in the petition alleging the child to be a child in need of services. The facilitator assists the parties in problem identification and resolution. During the facilitation process, the parties may agree to orally amend the allegations of the petition and the terms of the proposed plan for parent participation. The facilitator will assist the parties in resolving issues regarding the child's placement; the plan for visitation by the parent, guardian, and/or custodian; the responsibilities, duties and requisite services for the family's care, treatment and rehabilitation; the roles of other individuals in the family's rehabilitation; and other matters relative insuring the child's protection and best interests.

**Participants to the facilitation** – The parent, guardian and/or custodian; the attorney representing the parent, guardian, and or custodian; the guardian ad litem or court appointed special advocate; the county Department of Child Services shall participate in the facilitation process. The child shall attend the facilitation if the child's guardian ad litem or court appointed special advocate believes it is in the child's best interests to attend and believes the child to be of suitable age and maturity to participate. The child's relatives; the foster parent; persons providing support for the parent, guardian or custodian; and/or other persons who have significant or caretaking relationships to the child may be in attendance at the facilitation unless excluded by the court. Facilitations are not otherwise open to the public except as may be approved by the court for the purposes of training or research.

**Facilitation Procedure** – All cases pending an Initial Hearing shall be first submitted for facilitation. All parties are required to mediate the issues in good faith but are not compelled to reach an agreement. The facilitator shall first determine whether the

parties named in the petition have been apprised[ ]of their rights. Any request for the appointment of pauper counsel shall be completed in writing on a form prescribed by the court and submitted to a judge or magistrate for ruling prior to the start of the facilitation. The facilitator shall explain the process and identify the issues that are to be discussed in facilitation. Each allegation of the petition alleging the child to be a child in need of services shall be reviewed. Parties shall be given an opportunity to explain their position with regard to each allegation. Where appropriate and, by agreement of the parties, the allegation may be amended. Once the petition is facilitated, the facilitator shall assist the participants in determining the nature and types of services in which the child or parent, guardian, custodian, or other person should be required to participate. Agreements reported to the court following facilitation must be based on the autonomous decisions of the parties and not the decisions of the facilitator. The facilitator shall orally present the facilitation report to the court at the Initial Hearing and, if appropriate, the Dispositional Hearing. The report shall include a recitation of the parties' respective admissions and denials to the allegations of the . . . petition, the parties' agreement for provisional orders, parent participation plan and/or dispositional decree and a statement of unresolved issues. At the Initial Hearing, the court will confirm with the parties and the participants the terms of the facilitated agreement. The Court may adopt the parties' agreement as orders of the court if it determines the agreement is in the best interests of the child. Issues that are not resolved through facilitation or not adopted as an order of the court may be referred back by the court for additional facilitation, may be resolved by order of the court based on a summary presentation, or may be scheduled by the court for a subsequent hearing or fact finding. The rules of evidence do not apply in facilitation.

9. On July 6, 2016, after completion of the facilitation the parties appeared in Court along with their Court appointed counsel[]. Upon review of the record, the Court finds that Father confirmed

he had viewed the video advisement of his rights. Upon review of the record, the Court further finds that Father was directly asked by the Court whether he had any questions concerning his rights to which he responded "No your Honor."

10. On July 6, 2016, during the course of facilitation, the Court finds that with the assistance of counsel Father made numerous modifications to allegations 2, 3, 4, 6, 8, 14.

11. During the hearing, [Father] affirmed that his admissions, modified admissions and denials presented in open court by the [DCS] were true and accurate.

12. O[n] July 6, 2016, Father was further provided an opportunity to make any argument concerning whether the [Children] were Children in Need of Services prior to the Court's ruling. Father declined to do so and confirmed that his admissions were narrowly tailored as a result of pending criminal charges.

13. As a result of the admissions, the Court adjudicated the [Children] Children in Need of Services pursuant to I.C. 31-34-1-1 and entered a Dispositional Decree.

14. The Court finds that [Father] was fully advised of his rights on two (2) occasions and provided ample opportunity to inquire concerning the nature of his rights and these proceedings.

15. The Court finds that at all times relevant, [Father] was granted capable Court Appointed Counsel who adequately represented [Father] during the proceedings on July 6, 2016.

16. The Court finds that at no time did [Father] raise any objection or make any motion concerning the alleged violation of

his due process rights as contained in his Motion to Set Aside Admissions and Findings and Request for Factfinding. The Court further finds that [Father] was specifically prompted by this Court to voice any questions or raise any motion concerning his rights or the nature of the proceedings and he declined to do so.

17. The Court concludes that there is no evidence of fraud, duress or coercion concerning [Father's] admissions and denials taken in open court on July 6, 2016. The Court further concludes that Father participated in a facilitation at which he was presented with every opportunity to mediate any admission or denial of the petition; mediate the terms of the proposed plan for parent participation; mediate issues regarding the child's placement and visitation; mediate the responsibilities, duties and requisite services for the family's care, treatment and rehabilitation; discuss the roles of other individuals in the family's rehabilitation; and mediate all other matters relative insuring the child's protection and best interests.

18. As such, [Father's] Motion to Set Aside Admissions and Findings and Request or Factfinding is denied. Thus, the July 6, 2016 Additional Initial Hearing Order and Dispositional Decree shall not be set aside.

Appellant's Appendix II at 19-23.

## *Discussion*

[12] The issue is whether the juvenile court abused its discretion in denying Father's Motion to Set Aside Admissions and Findings and Request for Fact Finding. Father argues that the juvenile court abused its discretion by denying his motion, indicates that the motion was one under Ind. Trial Rule 60, and notes

that a meritorious defense is required for reasons (1), (2), (3), (4), and (8) under Rule 60(B). He contends that the late service of the amended petition denied him the right to properly prepare and defend against the petition, he did not have sufficient time to properly prepare for the hearing, the original petition contained general allegations with no specific circumstances or facts alleged and the amended petition contained fourteen specific allegations, and that the only risks to the State were additional delay and the potential of a fact finding hearing.

[13] DCS asserts that Father cannot show mistake, surprise, excusable neglect, or any justification for relief from judgment under Rule 60(B) because the difference between the initial and amended CHINS petitions were of form and not substance. It asserts that Father's admissions to the amended CHINS petition included statements taken directly from the Report of Preliminary Inquiry and Investigation. DCS also contends that, even assuming a difference in the petitions was of substance, Father was provided adequate time and opportunity with his counsel to address the allegations of the amended petition, cannot show actual harm, and has not provided a meritorious claim or defense.

[14] While Father's July 22, 2016 motion did not mention Ind. Trial Rule 60, his counsel argued at the August 1, 2016 hearing that the motion was essentially a request for relief under Trial Rule 60, and both parties characterize it as such on appeal. Ind. Trial Rule 60(B) provides:

On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:

  (1) mistake, surprise, or excusable neglect;

  (2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

  (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

  (4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;

        * * * * *

  (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a

party from a judgment, order or proceeding or for fraud upon the court.

[15] Relief from judgment under Trial Rule 60 is an equitable remedy within the trial court's discretion. *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013). We review a trial court's ruling on Rule 60 motions for abuse of discretion. *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 371 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*, *cert. denied*, 134 S. Ct. 952 (2014). An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* When reviewing the trial court's determination, we will not reweigh the evidence. *Id.* Ind. Trial Rule 60(B) affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant. *Id.* at 371-372. On a motion for relief from judgment, the burden is on the movant to demonstrate that relief is both necessary and just. *Id.* at 372. A trial court must balance the alleged injustice suffered by the moving party against the interests of the party who prevailed and society's interest in the finality of judgment. *Id.*

[16] A motion for relief from judgment under Rule 60(B) is not a substitute for a direct appeal. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010). "Trial Rule 60(B) motions address only the procedural, equitable grounds justifying relief from the legal finality of a final judgment, not the legal merits of the judgment." *Id.* (quoting *Mid-West Fed. Sav. Bank v. Epperson*, 579 N.E.2d 124, 129 (Ind. Ct. App. 1991), *reh'g denied*). With respect to the requirement that the

movant establish a meritorious claim or defense, a meritorious defense for the purposes of Rule 60(B) is "one that would lead to a different result if the case were tried on the merits." *Wagler*, 980 N.E.2d at 372 (citation omitted); *see also Baxter v. State*, 734 N.E.2d 642, 646 (Ind. Ct. App. 2000) ("A meritorious defense is one demonstrating that, if the case was retried on the merits, a different result would be reached.").

[17] The Indiana Supreme Court has discussed due process in CHINS cases as follows:

> Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976). We have previously written that the process due in a termination of parental rights action turns on balancing three *Mathews* factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *In re C.G.*, 954 N.E.2d 910, 917 ([Ind.] 2011). We hold these same factors apply to a due process analysis of a CHINS adjudication.

*In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012).

[18] Applying the *Mathews* factors, the private interests affected by the CHINS proceeding are substantial. *See In re K.D.*, 962 N.E.2d at 1259. The countervailing interest is a swift CHINS adjudication. *Id.* Our legislature has codified certain deadlines for receiving a copy of the petition. Specifically, Father cites Ind. Code § 31-34-10-2, which provides:

(a) The juvenile court shall hold an initial hearing on each petition within ten (10) days after the filing of the petition.

(b) The juvenile court shall set a time for the initial hearing. A summons shall be issued for the following:

(1) The child.

(2) The child's parent, guardian, custodian, guardian ad litem, or court appointed special advocate.

(3) Any other person necessary for the proceedings.

(c) A copy of the petition must accompany each summons. The clerk shall issue the summons under Rule 4 of the Indiana Rules of Trial Procedure.

Father points to subsection (c) and acknowledges that this portion of the statute was originally complied with and that proper notice was given with respect to the July 6, 2016 hearing, but he asserts that he was served with amended petitions on the date of the initial hearing on July 6, 2016.

[19] To the extent Father argues that the amended petition filed on July 6, 2016, was substantially different from the petition filed on June 10, 2016, we disagree. He asserts that the initial petition contained general allegations with no specific circumstances or facts alleged, while the amended petition contained fourteen specific allegations. The record reveals that the CHINS petition filed on June 10, 2016, stated under the heading, "Allegations Regarding the Alleged Father," and that it "incorporate[d] by reference the reasons for probable cause

as enumerated in the Report for Preliminary Inquiry dated June 10, 2016." Appellant's Appendix II at 42 (capitalization omitted). The Report of Preliminary Inquiry and Investigation detailed the events in June 2016, the events at the hotel, Father's smoking Spice, Father's arrest, and Father's answers to questions. DCS's amended petition filed on July 6, 2016 also contained allegations regarding the events in June 2016, the events at the hotel, Father's smoking Spice, his arrest, and his answers to questions. Father does not point to any specific substantive difference between the allegations in the Report of Preliminary Inquiry and Investigation, which was incorporated by reference into the initial CHINS petition, and the allegations in the July 6, 2016 petition.

[20] We also observe that CCS entries dated June 13, 2016, indicate that Father was present at a telephone conference and that Father was appointed counsel. Father does not challenge the juvenile court's statement that he was advised of his rights prior to the July 6, 2016 hearing. We also note that the amended petition was filed at 8:21 a.m. on July 6, 2016, that Father participated in a facilitation that day, and that a CCS entry dated July 6, 2016, states: "7/6/2016 4:24:24 PM Additional Initial and Dispositional on 7/6/2016 at 2:30 PM (Hearing Held)." *Id.* at 8.

[21] At the July 6, 2016 hearing, DCS's counsel reviewed Father's admissions with respect to the events at the hotel, Father's arrest, his prior convictions, his admission to smoking Spice, his statement that he does not believe that children need to be watched 24/7, and his admission that he could benefit from the

intervention of the court to provide services for himself and the Children which he could not obtain without the intervention of the court. Father does not assert he would not have admitted to the allegations. We cannot say that a risk of error created by the State's chosen procedure existed. Under the circumstances, we cannot say that the juvenile court abused its discretion by denying Father's Motion to Set Aside Admissions and Findings and Request for Fact Finding.

## *Conclusion*

[22] For the foregoing reasons, we affirm the court's denial of Father's motion.

[23] Affirmed.

Vaidik, C.J., and Bradford, J., concur.